IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Bernard A. Tilton,                            :
                    Plaintiff       :       Civil Action 2:12-cv-00408

        v.                            :       Judge Graham

Carolyn Colvin,                               :       Magistrate Judge Abel
Commissioner of Social Security,
                  Defendant       :

**REPORT AND RECOMMENDATION**

Plaintiff Bernard A. Tilton brings this action under 42 U.S.C. §§405(g) for review of a final decision of the Commissioner of Social Security denying his application for Disability Insurance benefits.  This matter is before the  Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.** Plaintiff Bernard Tilton had worked as a basket weaver at Longaberger. He developed bilateral carpal tunnel syndrome. Following surgery, he returned to work, although he reported difficulty with his hands. He asserts disability on the basis of narcolepsy.

The administrative law judge found that Tilton retained the ability to perform a reduced range of jobs having medium exertional demands. Mentally he was precluded from fast paced jobs and work with strict time constraints. Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge gave improperly weighed to the medical opinions;

- The administrative law judge failed to take into account all of plaintiff's severe impairments when formulating the residual functional capacity; and,
- The administrative law judge improperly evaluated plaintiff's credibility.

**Procedural History.** Plaintiff Bernard A. Tilton filed his application for disability insurance benefits on October 18, 2007, alleging that he became disabled on February 15, 2007, at age 43, by narcolepsy. (R. 111, 136.) The application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. On March 5, 2010, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified. (R. 26.) A vocational expert also testified. On May 13, 2010, the administrative law judge issued a decision finding that Tilton was not disabled within the meaning of the Act. (R. 22.) On March 16, 2012, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (R. 1-3.)

**Age, Education, and Work Experience.** Bernard A. Tilton was born August 9, 1963. (R. 111.) Tilton has a G.E.D. (R. 139.) He has worked as a basket weaver. He last worked February 15, 2007. (R. 136.)

**Plaintiff's Testimony.** The administrative law judge fairly summarized Tilton's testimony as follows:

> The claimant reported on disability reports and questionnaires prior to requesting a hearing and testified at the hearing that he is unable to perform any work activities due to carpal tunnel syndrome, narcolepsy, low back pain and depression. The claimant testified at the hearing that he drives to the store but only in half-hour

increments or when he takes the children to school. He has difficulty
with his hands and wrists due to carpal tunnel syndrome despite
having carpal tunnel release surgery on both hands at different
times. His hands fall asleep and he frequently drops objects. He can
write a note but will drop the writing utensil. He can turn keys and
button objects. He also has sleep apnea with narcolepsy which he has
had for seven or eight years.  He has gone to two different sleep
clinics for excessive daytime sleepiness. He also uses a continuous
positive airway pressure (CPAP) machine every night for snoring
and sleep apnea. A typical day for him is spent sitting around and
watching television, shifting his weight from side to the other. He has
no hobbies but does play computer games and does woodworking.
He does go out to eat with his wife on occasion. He does cut the grass
using a riding lawn mower. He has poor memory and frequently will
drive past stores that he driving to.

(R. 16.)

**Medical Evidence of Record.**  The administrative law judge's decision fairly sets

out the relevant medical evidence of record.  This Report and Recommendation will

only briefly summarize that evidence.

**Physical Impairments.**

Jeffrey Williams, D.O. Dr. Williams began treating Tilton on January 25, 2002. (R.

255-56.) On January 14, 2004, plaintiff reported not sleeping well at night. He reported a

long history of what sounded like sleep apnea. He tossed and turned and woke up a lot.

He woke up tired. He had daytime somnolence. (R. 254.) On January 5, 2005, Dr.

Williams noted that Tilton had sleep apnea and that he was unable to tolerate the C-

PAP machine. Plaintiff complained of breathing out of his nose. (R. 253.)

On May 8, 2006, plaintiff was seen for a refill of Percocet. Plaintiff continued to

have left wrist pain and low back pain. He worked as a basket weaver, but he reported

3

having trouble weaving. (R. 218.) On June 14, 2006, plaintiff reported that he exacerbated his back pain while doing some work around the house. Dr. Williams noted that plaintiff had chronic low back pain and chronic left wrist carpal tunnel syndrome. (R. 217.) On November 8, 2006, Dr. Williams saw plaintiff for a routine checkup. Plaintiff complained of fatigue. He had not been able to tolerate his C-PAP. He reported not sleeping at well. He was taking Percocet for pain. Dr. Williams diagnosed chronic low back pain, sleep apnea, hyperlipidemia, and osteoarthritis. (R. 216.)

   On March 7, 2008, plaintiff complained of low back and elbow pain. (R. 312.)

   On May 11, 2009, plaintiff reported difficulty with arthritis. The pain in his knees made it difficult for him to stand for long periods of time. His sleep was erratic. He slept less three hours a night. Tilton was only permitted to drive for 30 minutes at a time.  Dr. Williams diagnosed sleep apnea, narcolepsy, chronic low back pain, chronic knee pain, chronic tenosynovitis of the hands and wrist, and hyperlipidemia.  (R. 309.)

   On September 30, 2009, Dr. Williams completed a medical source statement. Plaintiff could occasionally lift up to 10 pounds. He could rarely lift up to 20 pounds. Tilton could occasionally use his right hand/arm, but he could rarely use his left hand/arm. He noted that plaintiff had low back pain. Plaintiff could stand for 1 hour total for 10 minutes at a time. He could walk for 2-3 hours for 30 minutes at a time. Plaintiff could sit for 2-3 hours for 30 minutes at a time.  He could lift up to 15 pounds rarely. He could use his right hand for simple grasping.  He could perform fine manipulation with both hands, but he could not push or pull. Tilton could rarely bend,

4

squat, crawl, or climb steps or ladders. He could not repeatedly reach above shoulder level on the left. (R. 328-31.)

David G. Stainbrook, Jr., D.O. On February 27, 2006, Dr. Stainbrook saw plaintiff for followup concerning complaints of discomfort in his left shoulder, right index finger, and left hand. A February 4, 2006 EMG/nerve conduction velocity showed no abnormalities in the left upper extremity. On physical examination, plaintiff had tenderness over all flexor tendons in his left wrist consistent with tendonitis. Plaintiff had 80 degrees of rotation of the cervical spine. He had 180 degrees of abduction and flexion of the shoulders. Internal rotation was symmetrical. He had full lumbar spine flexion with a Schoeber's test of 16/10 cm. There was tenderness over the left bicipital tendon and pain to palpation of the left lateral epicondylar area. There was left hand flexor tendon and palmar tenderness. There were bilateral Heberden's and Bouchard's nodes.

Dr. Stainbrook diagnosed hand pain, status post left carpal tunnel release, left shoulder pain, carpal tunnel syndrome, history of two herniated disks in the lower back, tendonitis of the left wrist, flexor tendonitis in the left hand, osteoarthritis of the hands, left lateral epicondylitis, and left bicipital tendonitis. (R. 264-65.)

James E. Lundeen, Sr. M.D. On February 23, 2007, Dr. Lundeen, who holds himself out as a certified independent medical examiner, performed disability evaluation examination of Tilton, at the request of his attorney, in connection with a workers' compensation claim. Tilton had carpal tunnel release surgery in October 2005.

5

Now he used a wrist support. Repetitive use worsened his wrist pain. Dr. Lundeen opined that the permanent, partial impairment in terms of percentage of the whole person was 14%. (R. 245-47.)

On April 4, 2007, Dr. Lundeen re-checked Tilton's left wrist. He had continued complaints of pain in his hands with gripping or any kind of vigorous use. (R. 248.)

Neurological Associates of SE Ohio, Inc. On September 5, 2007, Robert J. Thompson, M.D., performed a consultative examination at the request of Tilton's treator, Dr. Jeffrey Williams. (R. 191-92.) Tilton complained of a lot of daytime drowsiness. He went to bed about 10 p.m. Although he fell asleep easily, he work up three to four times a night and had trouble going back to sleep. Tilton also reported some episodes of what sounded like sleep paralysis. On occasion, he had a feeling of smothering at night. He stopped working in February 2007 due to a combination of his daytime drowsiness and carpal tunnel syndrome. Dr. Thompson noted that he had previously seen Tilton once in 1998 and once again in 2004. In 1998, Tilton had been working the night shift, and Dr. Thompson concluded that he had a circadian rhythm syndrome and recommended that he work a day shift. In 2004, Dr. Thompson diagnosed him with mild obstructive sleep apnea, possible periodic limb movement disorder, and possible narcolepsy. (R. 191.) Dr. Thompson concluded that Tilton's sleep "very complicated sleep problem" included "mild obstructive sleep apnea, possible narcolepsy, and circadian rhythm disturbance." (R. 192.)

On October 3, 2007, Christina A. Schulz, M.S., C.N.P., who practiced with Dr.

Thompson, saw Tilton for a followup examination. He reported that Lunesta caused a metallic taste in his mouth and he was more tired the next day. He still had not slept well. He reported that he had difficulty functioning due to exhaustion. He reported difficulty focusing, concentrating, and with his memory. (R. 190.)

On November 14, 2007, Schultz noted that Tilton's 2004 polysomnogram showed short REM latency with multiple REM periods suggestive of narcolepsy and a possible periodic limb movement disorder. In 2004, plaintiff was started on a nasal CPAP, which he failed. He was prescribed Neurontin for his limb movement disorder. Tilton did not return for follow up care for three years. When he returned, Tilton reported that he had quit his job because of excessive daytime drowsiness and fatigue.

Tilton has tried several medications, but they were discontinued due to side effects. He was noted as having a complicated case involving mild obstructive sleep apnea, possible narcolepsy, and rhythm disturbance. Tilton was referred for surgical consideration due to his difficulty tolerating medications. (R. 188-89.)

On July 7, 2009, Carrie A. Schilling, M.S.N., C.N.P, also an associate of Dr. Thompson, saw Tilton for a followup examination. He reported falling asleep approximately 2-3 times during the day. He had poor concentration. He had issues with his legs jerking, but the sleepiness was more bothersome. (R. 341.)

On August 31, 2009, Schilling indicated that plaintiff continued to experience excessive daytime fatigue and problems concentration. A trial of Nuvigill, 150 mgs. daily, made him shaky and did not help. Tilton said he had to keep moving around the

7

house to avoid falling asleep, that he could not even read a book without falling asleep. Plaintiff had previously tried multiple medications without success in controlling his symptoms. In light of that history, it was unlikely that his symptoms would be controlled by medication. Schilling had a long discussion with Tilton about the importance of having his CRAP mask and equipment replaced because poor mask seals could be contributing to his symptoms. (R. 340.)

Walter Holbrook, M.D. On December 3, 2007, Dr. Holbrook, a state agency reviewing physician, completed a physical residual functional capacity assessment. Dr. Holbrook concluded that plaintiff had no exertional limitations. Plaintiff could never balance, and he should avoid all exposure to hazards. Dr. Holbrook concluded that plaintiff's statements appeared credible in nature but not in severity. (R. 199-206.)

On February 5, 2008, Diane Manos, M.D. reviewed the entire file and affirmed the December 3, 2007 assessment. (R. 241.)

**Psychological Impairments.**

Nicholas P. Dubbeling, Ph.D. In October 2009, Dr. Dubbeling, a psychologist, completed a diagnostic assessment and psychological evaluation at the requests of the Bureau of Vocational Rehabilitation. Plaintiff worked at Longaberger from 1992 through 2006. In 2003, he started having orthopedic problems. He underwent carpal tunnel surgery. He was diagnosed with bursitis in his left shoulder, left tennis elbow, and osteoarthritis. He had a herniated disc. He was diagnosed with narcolepsy. He reported

that he is unable to work because of pain in his hands, knees, and back .He had headaches and hurt all over.

Tilton described his mood as cranky, which he believed was the result of being tired and lacking energy. His sleep was erratic. Plaintiff reported that his alertness was affected by fatigue. On mental status examination, he was oriented in all four spheres. His long-term memory functioning was not impaired. His short-term memory functioning after five minutes included two of four words. His concentration was adequate. His attention span included six digits forward and five digits backward. Plaintiff reported not daily schedule due to his erratic sleep pattern. He and his wife care for two foster children. Dr. Dubbeling diagnosed him with dysthymic disorder. (R. 348-59.)

### Administrative Law Judge's Findings.

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2.  The claimant has not engaged in substantial gainful activity since February 15, 2007, the alleged onset date (20 CFR 404.1571 *et seq*.)

3.  The claimant has the following severe impairments: narcolepsy, a history of carpal tunnel syndrome and depression (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to

perform at least medium work as defined in 20 CFR 404.1567(c). Specifically, the claimant can lift or carry 25 pounds frequently and 50 pounds occasionally. He is precluded from using ladders, working around hazardous machinery or unprotected heights and driving automotive equipment. He is capable of frequent fingering/handling. He should have day time work only. Mentally, he is precluded from fast paced work or work with strict time constraints.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on August 9, 1963 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404. 1569 and 404.1569(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from February 15, 2007, through the date of this decision (20 CFR 404.1520(g)).

(R. 13-22.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389,

401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is

"'more than a mere scintilla.'"  *Id*.  *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir.

1976).  The Commissioner's findings of fact must be based upon the record as a whole.

*Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366

(6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining

whether the Commissioner's decision is supported by substantial evidence, the Court

must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers*

*v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and*

*Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

    **Plaintiff's Arguments.**  Plaintiff argues that the decision of the Commissioner

denying benefits should be reversed because:

- The administrative law judge gave improperly weighed to the medical
  opinions. Plaintiff argues that the administrative law judge violated SSR 96-2p
  by failing to clearly describe the weight given to the medical opinion evidence
  and not providing good reasons for what weight was given and improperly
  gave greater weight to a non-examining opinion subject to no more
  comprehensive or detailed information than the treating source. The
  administrative law judge concluded that Dr. Williams' opinion was not
  entitled to controlling weight, but he did not indicate what weight should be

given. The administrative law judge indicated that Dr. Williams' opinion that

plaintiff could not work was suspect. The administrative law judge stated that

doctors can be sympathetic to patients, and patients may push for a particular

diagnosis in order to obtain disability benefits. Plaintiff argues that the

administrative law judge failed to assign any clear weight to Dr. Williams'

opinion and that his reasons for rejecting his opinion were speculative and

insufficient. Plaintiff further argues that the administrative law judge failed to

describe the weight given to the State Agency opinion. The State Agency

physician did not have access to the entire record; an additional 120 pages of

medical evidence were submitted after the review. Plaintiff maintains that the

administrative law judge erred by failing to recognize that the opinion of Dr.

Dubbeling was vocational rehabilitation assessment. Plaintiff also argues that

the administrative law judge substituted his own opinion in the place of the

analysis of the factors of 20 C.F.R.  § 404. 1527(d) in order to discount the

opinion of a treating source. The administrative law judge indicated that

because he felt that Dr. Williams' opinion was particularly sympathetic to

Tilton, the opinion was not worthy of belief.  There is no evidence in the

record supporting the administrative law judge's conclusion.

- The administrative law judge failed to take into account all of plaintiff's severe
  impairments when formulating the residual functional capacity. Plaintiff
  argues that the administrative law judge failed to consider the limitations

imposed by his narcolepsy. The uncontradicted evidence showed that Tilton required two to three 20-40 minute naps during day. The administrative law judge failed to account for Tilton's need to take several breaks per day. The administrative law judge hypothesized that an improperly fitting CPAP machine might be causing the need for naps. All of plaintiff's doctors who treated him for his sleep problems had been unsuccessful in improving his symptoms and supported his allegation that he required naps throughout the day.

- The administrative law judge improperly evaluated plaintiff's credibility. Plaintiff argues that the administrative law judge erred by not evaluating plaintiff's credibility based on whether his allegations were supported in the record but on how the allegations completed with the residual functional capacity assessment. The administrative law judge improperly concluded that plaintiff's allegations regarding his narcolepsy were not credible because he had been capable of working with these symptoms prior to the alleged onset of disability. Plaintiff maintains that the records demonstrates that prior to his alleged date of onset, he had not suffered from a combination of all his severe impairments. When he could not longer return to his past work, the flexibility of his past work that accommodated some of his symptoms was not available in other jobs.

13

**Analysis.**  Treating Doctor: Legal Standard.  A treating doctor's opinion[1] on the issue of disability is entitled to greater weight than that of a physician who has examined plaintiff on only one occasion or who has merely conducted a paper review of the medical evidence of record.  20 C.F.R. § 404.1527(d)(1).  *Hurst v. Schweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983).  The Commissioner's regulations explain that Social Security generally gives more weight to a treating doctors' opinions because treators are usually "most able to provide a detailed, longitudinal picture" of the claimant's medical impairments. 20 C.F.R. § 404.1527(d)(2).  When the treating doctor's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record" the Commissioner "will give it controlling weight. " *Id.*

---

[1]The Commissioner's regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2). Treating sources often express more than one medical opinion, including "at least one diagnosis, a prognosis and an opinion about what the individual can still do." SSR 96-2p, 1996 WL 374188, at *2. When an administrative law judge fails to give a good reason for rejecting a treator's medical opinion, remand is required unless the failure does not ultimately affect the decision, *i.e.,* the error is *de minimis*. *Wilson,* 378 F.3d at 547. So reversible error is not committed where the treator's opinion "is patently deficient that the Commissioner could not possibly credit it;" the administrative law judge's findings credit the treator's opinion or makes findings consistent with it; or the decision meets the goal of 20 C.F.R. § 1527(d)(2) but does not technically meet all its requirements. *Id. See, Grayheart v. Commissioner of Social Security,* __ F.3d ____, _____, 2013 WL 896255, *14 (6th Cir. March 12, 2013).

Even though a claimant's treating physician may be expected to have a greater insight into his patient's condition than a one-time examining physician or a medical adviser, Congress specifically amended the Social Security Act in 1967 to provide that to be disabling an impairment must be "medically determinable." 42 U.S.C. §423(d)(1)(A). Consequently, a treating doctor's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic test evidence. *Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779-780 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-1236 (6th Cir. 1971); *Lafoon v. Califano*, 558 F.2d 253, 254-256 (5th Cir. 1975). 20 C.F.R. §§404.1513(b), (c), (d), 404.1526(b), and 404.1527(a)(1)[2].

The Commissioner's regulations provide that she will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1).  When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic

---

[2]Section 404.157(a)(1) provides:
You can only be found disabled if you are unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. See §404.1505. Your impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. See §404.1508.

techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

When the treating source's opinion is well-supported by objective medical evidence and is not inconsistent with other substantial evidence, that ends the analysis. 20 C.F.R. § 404.1527(c)(2); Social Security Ruling 96-2p[3]. *Grayheart v. Commissioner of Social Security,* __ F.3d ____, _____, 2013 WL 896255, *9 and *10 (6th Cir. March 12, 2013). The Commissioner's regulations require decision-makers "to provide 'good reasons' for discounting the weight given to a treating-source opinion. [20 C.F.R.] § 404.1527(c)(2)."[4] *Grayheart,* above, __ F.3d at _____, 2013 WL 896255, *9.

The Commissioner has issued a policy statement, Social Security Ruling 92-6p, to guide decision-makers' assessment of treating-source opinion. It emphasizes:

1. A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.

2. Controlling weight may be given only in appropriate circumstances to medical opinions, *i.e.,* opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources.

3. Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.

---

[3]Social Security Ruling 96-2p provides, in relevant part:

. . .

6. If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.,* it must be adopted.

[4]Section 404.1527(c)(2) provides, in relevant part: "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."

4. Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record.

5. The judgment whether a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify.

6. If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.*, it must be adopted.

7. A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected.  It may still be entitled to deference and be adopted by the adjudicator.

The focus at this step is solely on whether the treating-source opinion is well-supported by objective medical evidence and not inconsistent with other substantial evidence. In making this determination the factors for assessing the *weight* to give to the medical opinions of any medical source, 20 C.F.R. § 404.1527(c), are not used. These come into play only when there are good reasons not to give the treating-source opinion

controlling weight.  20 C.F.R. § 404.1527(c)(2)[5]; *Grayheart,* above, __ F.3d at _____,

2013 WL 896255, *10.

      If there are good reasons to find that the treating-source opinion is not

controlling, then the decision-maker turns to evaluating all the medical source evidence

and determining what weight to assign to each source, including the treating sources[6].

The Commissioner's regulations require the decision-maker to considers the length of

the relationship and frequency of examination; nature and extent of the treatment

---

[5]Section 404.1527(c)(2) provides, in relevant part:
  If we find that a treating source's opinion on the issue(s) of the nature and
severity of your impairment(s) is well-supported by medically acceptable
clinical and laboratory diagnostic techniques and is not inconsistent with
the other substantial evidence in your case record, we will give it
controlling weight. *When we do not give the treating source's opinion
controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and
(c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through
(c)(6) of this section in determining the weight to give the opinion*

(Emphasis added.)

[6]Even when the treating source-opinion is not controlling, it may carry sufficient
weight to be adopted by the Commissioner:
  Adjudicators must remember that a finding that a treating source medical
opinion is not well-supported by medically acceptable clinical and labora-
tory diagnostic techniques or is inconsistent with the other substantial
evidence in the case record means only that the opinion is not entitled to
"controlling weight," not that the opinion should be rejected. Treating
source medical opinions are still entitled to deference and must be weigh-
ed using all of the factors provided in 20 CFR 404.1527 and 416.927. In
many cases, a treating source's medical opinion will be entitled to the
greatest weight and should be adopted, even if it does not meet the test for
controlling weight.

SSR 96-2p.

relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision.  20 C.F.R. § 404.1527(c)(1) through (6). Subject to these guidelines, the Commissioner is the one responsible for determining whether a claimant is disabled.  20 C.F.R. § 404.1527(e).

The case law is consistent with the principals set out in Social Security Ruling 96-2p.  A broad conclusory statement of a treating physician that his patient is disabled is not controlling.  *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).  For the treating physician's opinion to have controlling weight it must have "sufficient data to support the diagnosis." *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).  The Commissioner may reject the treating doctor's opinions when "good reasons are identified for not accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004).  Even when the Commissioner determines not to give a treator's opinion controlling weight, the decision-maker must evaluate the treator's opinion using the factors set out in 20 C.F.R. § 404.1527(d)(2).  *Wilson,* 378 F.3d at 544; *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir. 2009). There remains a rebuttable presumption that the treating physician's opinion "is entitled to great deference." *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242 (6th Cir. 2007); *Hensley,* above. The

19

Commissioner makes the final decision on the ultimate issue of disability. *Warner v. Commissioner of Social Security,* 375 F.3d at 390; *Walker v. Secretary of Health & Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 855 (6th Cir. 1986); *Harris v. Heckler*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n.1 (11th Cir. 1982).

Treating Doctor: Discussion.  The administrative law judge stated:

> [T]he opinion assessed by Dr. Williams in September 2009 is work prohibitive. This opinion is not supported by the medical evidence of records and is so extreme that it is not worthy of belief. The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's request and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, this treating source seems to be particularly sympathetic with the claimant.

(R. 19-20.) To be entitled to controlling weight, the opinion of a treating physician must be well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record.  Here, the administrative law judge failed to provide "good reasons" for either prong of the test for controlling weight. The administrative law judge made conclusory statements without any reference to supporting evidence. Although he asserted that Dr. Williams' op was not supported by the medical record, he did not identify what evidence in that record led him to that conclusion.

20

The administrative law judge also erred by ending his evaluation of Dr. Williams' opinion prematurely. Once he concluded that Dr. Williams' opinion was not entitled to controlling weight, he should have evaluated all the medical source evidence and determining what weight to assign to each source, including the treating sources by considering the length of the relationship and frequency of examination; nature and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision.  20 C.F.R. § 404.1527(c)(1)-(6).

Plaintiff argues that Dr. Williams' opinion was based on greater and more detailed information than the state agency review. Dr. Williams was plaintiff's treating physician prior to the alleged onset date of his disability and remained his doctor through the time of the hearing. Dr. Williams treated plaintiff for his severe impairments and had access to the treatment notes and test results of the consultative physicians. Dr. Williams' opinion was the result of a lengthy treatment history and his personal knowledge of Tilton. The administrative law judge, however, neglected to consider any of these factors when evaluating Dr. Williams' opinion. As a result, this case be should be REMANDED. On remand, the administrative law judge should determine if there are good reasons to find that Dr. Williams' opinion is not controlling,

21

and if it is not, then the administrative law judge should evaluate all the medical source evidence and determine what weight to assign to each source, including the treating sources.

Residual Functional Capacity. Plaintiff argues that the administrative law judge failed to take into account his narcolepsy when formulating his residual functional capacity. The administrative law judge stated:

[A]though the claimant has been diagnosed with narcolepsy and sleep apnea, and he alleges that he continues to have a need to take two or three 30 minute naps during the day, progress reports from August 2009 (Exhibit 15F) indicate that the claimant has continued to use the same CPAP pressure that he was prescribed in 2004. The pressure at that time was set for eight (8). He was prescribed Lunesta for sleep and Provigil for narcolepsy in 2007. He continues to use the same CPAP machine and mask that he has had for years and continues to be prescribed and take Provigil for narcolepsy. However, during the August 2009 treatment, the claimant was advised that a poor mask seal could be contributing to his symptoms. There is no evidence in the records that he has obtained a new mask or a new CPAP pressure. It is noteworthy that during the initial treatment phase in 2004, the claimant related to Dr. Thompson that he had these same problems and been working with them for over 15 years. He continue to work through those 15 years with the impairments and symptoms and also continued to work from the time of the consultation with Dr. Thompson in February 2004 until February 2007, the alleged onset date. He also told Dr. Thompson that when he worked with the symptoms, he would take naps on his breaks suggesting that he was able to control his sleepiness. Although the claimant's attorney suggest that currently the claimant would need to take unscheduled breaks to nap as a result of his impairments, the medical evidence does not support a conclusion that the claimant's narcolepsy and sleep apnea have deteriorated significantly since the time he was working as to preclude him from all work activities. Dr. Thompson's conclusion in April 2010 (Exhibit 17F) that the claimant's sleep disorder was "quite severe" and so far had been "impossible to completely control" does not rule out all the performance of all work activities. Rather, the medical evidence of record does support that the only limitations the claimant exertionally is the

22

> preclusion from using ladders, working around hazardous machinery or unprotected heights, daytime work or driving at work, as the undersigned established in the previous Finding.

(R. 18-19.) The administrative law judge's conclusion that no further limitations were necessary in formulating plaintiff's residual functional capacity is supported by substantial evidence. The administrative law judge reasonably concluded that the medical evidence did not support the conclusion that more limitations were warranted. The medical evidence did not support plaintiff's allegation that he needed to take two to three naps each day.

<u>Credibility Determination</u>. Pain is an elusive phenomena.  Ultimately, no one can say with absolute certainty whether another person's subjectively disabling pain and other symptoms preclude all substantial gainful employment.  The Social Security Act requires that the claimant establish that he is disabled.  Under the Act, a "disability" is defined as "inability to engage in any substantial gainful activity *by reason of any medically determinable or mental impairment* which can be expected . . . to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. §423(d)(1)(A) (emphasis added).

Under the provisions of 42 U.S.C. §423(d)(5)(A), subjective symptoms alone cannot prove disability. There must be objective medical evidence of an impairment that could reasonably be expected to produce disabling  pain or other symptoms :

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically

acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or other laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

The Commissioner's regulations provide a framework for evaluating a claimant's

symptoms consistent with the commands of the statute:

(a) *General*. In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. By objective medical evidence, we mean medical signs and laboratory findings as defined in §404.1528(b) and (c). By other evidence, we mean the kinds of evidence described in §§404.1512(b)(2) through (6) and 404.1513(b)(1), (4), and (5) and (e). These include statements or reports from you, your treating or examining physician or psychologist, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work. We will consider all of your statements about your symptoms, such as pain, and any description you, your physician, your psychologist, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work. However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to

produce the pain or other symptoms alleged and which, when
considered with all of the other evidence (including statements about
the intensity and persistence of your pain or other symptoms which
may reasonably be accepted as consistent with the medical signs and
laboratory findings), would lead to a conclusion that you are
disabled.  In evaluating the intensity and persistence of your
symptoms, including pain, we will consider all of the available
evidence, including your medical history, the medical signs and
laboratory findings and statements about how your symptoms affect
you.  (Section 404.1527 explains how we consider opinions of your
treating source and other medical opinions on the existence and
severity of your symptoms, such as pain.)  We will then determine
the extent to which your alleged functional limitations and
restrictions due to pain or other symptoms can reasonably be
accepted as consistent with the medical signs and laboratory findings
and other evidence to decide how your symptoms affect your ability
to work.

20 C.F.R. §404.1529(a). A claimant's symptoms will not be found to affect his ability to

work unless there is a medically determinable impairment that could reasonably be

expected to produce them. 20 C.F.R. § 404.1529(b). If so, the Commissioner then

evaluates the intensity and persistence of the claimant's pain and other symptoms and

determines the extent to which they limit his ability to work. 20 C.F.R. § 404.1529(c). In

making the determination, the Commissioner considers

all of the available evidence, including your history, the signs and
laboratory findings, and statements from you, your treating or nontreating
source, or other persons about how your symptoms affect you. We also
consider the medical opinions of your treating source and other medical
opinions . . . .

*Id.*

In this evaluation of a claimant's symptoms, the Commissioner considers both objective medical evidence and "any other information you may submit about your symptoms." 20 C.F.R. § 404.1529(c)(2). The regulation further provides:

> Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions which you, your treating or nontreating source, or other persons report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account as explained in paragraph (c)(4) of this section in reaching a conclusion as to whether you are disabled. We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating or nontreating source, and observations by our employees and other persons. Section 404.1527 explains in detail how we consider and weigh treating source and other medical opinions about the nature and severity of your impairment(s) and any related symptoms, such as pain. Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (I) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). When determining the extent to which a claimant's symptoms limit his ability to work, the Commissioner considers whether the claimant's statements about the symptoms is supported by or inconsistent with other evidence of record:

> In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, we consider all of the available evidence described in paragraphs (c)(1) through (c)(3) of this section. We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

20 C.F.R. § 404.1529(c)(4).

SSR 96-7p explains the two-step process established by the Commissioner's regulations for evaluating a claimant's symptoms and their effects:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. The finding that an individual's impairment(s) could reasonably be expected to produce the individual's pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms. . . .

27

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements. In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. § 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g. lying

> flat on his or her back, standing for 15 to 20 minutes every
> hour, or sleeping on a board); and

> 7. Any other factors concerning the individual's functional
> limitations and restrictions due to pain or other symptoms.

<u>Case law interpreting the statute and regulations</u>. At the outset, it is important to keep in mind that symptoms are the claimant's "description of [his/her] physical or mental impairment." 20 C.F.R. § 404.1528(a). Inevitably, evaluating symptoms involves making credibility determinations about the reliability of the claimant's self-report of his symptoms. *Smith ex rel E.S.D. v. Barnhart*, 157 Fed.Appx. 57, 62 (10th Cir. December. 5, 2005) (not published)("Credibility determinations concern statements about symptoms.")

"Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain." *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 247 (2007); SSR 96-7p, 1996 WL 374186 (July 2, 1996). That test was first set out in *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). First, the Court must determine "whether there is objective medical evidence of an underlying medical condition." If so, the Court must then

> examine: (1) whether objective medical evidence confirms the
> severity of the alleged pain arising from the condition; or (2)
> whether the objectively established medical condition is of such a
> severity that it can reasonably be expected to produce the alleged
> disabling pain.

*Duncan*, 801 F.2d at 853. Any "credibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Secretary of Health and Human Services*,

823 F.2d 918, 920 (6th Cir. 1987); *Rogers,* 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir.1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir.1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir.1981)).  The ALJ is required to explain her credibility determination in her decision, which "'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *See id.* (quoting SSR 96-7p).  Furthermore, the ALJ's decision must be supported by substantial evidence.  *Rogers,* 486 F.3d at 249.

Discussion of  ALJ's credibility determination.  The administrative law judge concluded that plaintiff's allegations concerning the persistence and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the above residual functional capacity assessment. Plaintiff was first examined by Dr. Thompson in 2004, and the administrative law judge noted that plaintiff waited three years before returning to Dr. Thompson for treatment of his narcolepsy. Plaintiff did not begin treatment for depression until 2009. The administrative law judge noted that despite plaintiff's allegations of continued pain following a left carpal tunnel release surgery, February 2006 EMG studies ruled out additional abnormalities. As a result, the administrative law judge's credibility determination is supported by substantial evidence in the record.

From a review of the record as a whole, I RECOMMEND that this case be REMANDED. On remand, the administrative law judge should determine if there are good reasons to find that Dr. Williams' opinion is not controlling, and if it is not, then

the administrative law judge should evaluate all the medical source evidence and determine what weight to assign to each source, including the treating sources.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).


 s/Mark R.  Abel
United States Magistrate Judge